IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE

Assigned on Briefs November 12, 2024 at Jackson

## STATE OF TENNESSEE v. CALVIN DWIGHT BUTLER

### Appeal from the Criminal Court for Hamilton County
No. 313075   Amanda B. Dunn, Judge

_____

### No. E2024-00103-CCA-R3-CD

_____

The defendant, Calvin Dwight Butler, pled guilty to sexual exploitation of a minor. As a condition of his plea, the defendant agreed to a sentence of six years with the manner of service to be determined by the trial court. After a sentencing hearing, the trial court ordered the defendant to serve his six-year sentence incarcerated with the Tennessee Department of Correction. On appeal, the defendant contends the trial court erred in sentencing the defendant to a term of confinement. Upon our review of the record and the parties' briefs, we affirm the trial court's decision.

**Tenn. R. App. P. 3 Appeal; Judgment of the Criminal Court Affirmed**

J. ROSS DYER, J., delivered the opinion of the court, in which ROBERT L. HOLLOWAY, JR., and MATTHEW J. WILSON, JJ., joined.

Jessica F. Butler, Franklin, Tennessee, for the appellant, Calvin Dwight Butler.

Jonathan Skrmetti, Attorney General and Reporter; Garrett D. Ward, Assistant Attorney General; Coty Wamp, District Attorney General; and Charles Minor, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

### *Facts and Procedural History*

On September 20, 2018, Agent George Nalley, a special agent with Homeland Security Investigations, executed a warranted search of the defendant's residence for evidence pertaining to child pornography. The search was instigated pursuant to a lead from New Zealand authorities that an individual, known as BLKmale29, had shared child

pornography in a website's chatroom. Authorities traced the username to an IP address linked to the defendant's residence. During the search, several computer devices were seized for analysis.

Subsequently, Agent Nalley interviewed the defendant. The defendant, not initially forthcoming, ultimately confessed to viewing and downloading child pornography for sexual gratification. Forensic analysis of the defendant's devices discovered 120 images and 40 videos of child pornography, among which were 47 images and 10 videos of minors known by the National Center for Missing and Exploited Children. The forensic analysis also revealed the defendant used internet storage sites to share links to additional images and videos of child pornography. The defendant admitted to having sexual urges to view the pornographic material, which he would satisfy by finding images and masturbating to them. The investigation also found that the defendant communicated in a sexually explicit manner through online meeting sites with individuals who identified as minors.

In March 2022, a Hamilton County Grand Jury indicted the defendant for sexual exploitation of a minor, possessing over 100 images, a Class B Felony. Pursuant to a plea agreement, the defendant pled guilty to the Class C felony of sexual exploitation of a minor with an agreed upon six-year sentence; the manner of service was to be determined by the trial court.

During the sentencing hearing, a presentence report and a psychosexual evaluation were entered into evidence. The defendant's presentence report was compiled by Christina Creekmore, a probation officer, who met with the defendant to review his employment and health history, as well as to complete a PSI assessment. Ms. Creekmore testified that during her conversation with the defendant, he understood the questions and responded appropriately. The report indicated the defendant had no prior criminal record or substance abuse issues. Further, the defendant had achieved a high school diploma, had an employment history, and a supportive family. As a result of those determinations, the defendant was given a low rating for the risk of recidivism; however, none of the questions posed by Ms. Creekmore were designed for sex offenses.

Pursuant to the trial court's request, Dr. Michael Adler performed a psychosexual evaluation of the defendant. In his report, Dr. Adler found the defendant exhibited low levels of empathy for the victims, writing that although the defendant "recognized the harmful impact of his offense," he "appeared to have little empathy for or recognition of the actual harm to his victims." The defendant admitted that despite feeling "terrible" while viewing an image of a crying, three-year old child receiving oral sex from an adult, he continued to masturbate to it. The defendant also stated that, while most of the children in the images "did not appear to agree with what was being done to them," some of the children "like it" or appeared "happy."

As to the defendant's risk of recidivism, Dr. Adler found that the defendant showed "cognitive distortions" towards his current offense, appearing "to portray himself as the victim of his own circumstances." Further, the defendant minimized his own behavior and "presented denial and irrational, magical thinking" as to his ability to prevent himself from offending in the future. Although Dr. Adler's report cautioned that it was likely the defendant was not honest in his assessment as to the extent of his sexual offending, the assessment found the defendant had a moderate-high level of risk associated with deviant interest. Dr. Adler's report also counseled that the defendant was the type of offender that has "little insight into his own behaviors," and "could become predatory (as evidenced by his history with chatting online with minors)." Ultimately, the psychosexual evaluation qualified the defendant as a moderate risk level for recidivism and recommended the defendant receive a community-based sex offender treatment program.

The defendant also testified on his own behalf at the hearing. The defendant described his educational and employment history as stable, working as both a housekeeper at several motels and as a "packer" or package handler for shipping companies. While able to live on his own, the defendant testified that due to financial difficulties, he was currently living with his mother and stepfather who welcomed him. The defendant claimed that since the search in 2018, he had not viewed any child pornography or been charged with other crimes. As to the offense at bar, the defendant maintained he had "full remorse for looking at that stuff," because it was against the law and "pretty much wrong."

On cross-examination, the defendant admitted that pornography was his only source of sexual gratification and child pornography played a large part of that gratification. The defendant testified he had viewed child pornography approximately every two to three days over a five-year period. He also testified that some of the children "was persuading (*sic*) into like it."

The defendant's mother, Rosalyn Galloway, also testified at the hearing and described the defendant's early diagnosis of an intellectual disability. She explained that during his early education years, the defendant was assigned to a self-contained classroom for special needs children. However, by the time the defendant reached high school, he had been fully integrated with other students with the assistance of individual resources.

Following testimony and argument from counsel, the trial court stated it had considered the principles of sentencing, as well as, the evidence presented during the hearing, including the presentence report and the psychosexual evaluation, and the statistical information as to sentencing practices for similar offenses. In considering alternative sentencing, the court examined the defendant's potential for rehabilitation for treatment, the nature and characteristics of criminal conduct involved, the evidence on

mitigating and enhancement factors, the defendant's testimony, and the arguments of counsel. Specifically, the trial court noted evidence of the defendant's minimization and lack of understanding of the seriousness of the offense, his lack of empathy for the victims, and his belief that some children might have been persuaded into enjoying it. Ultimately, the trial court found there was, not only a risk of recidivism, but increasing behaviors if there was not immediate intervention in the case.

As to the application of mitigating factors, the trial court noted, although the defendant's intellectual disability was one of several mitigating factors present, it had been previously factored into the plea agreement's felony classification reduction and length of sentence. In addition, the trial court made note of the defendant's ability to "search terms, to use Zoom and Skype to communicate with minors, to enter group chats and to figure out how to post links there." As to the defendant's suitability for community corrections or potential for rehabilitation, the trial court reiterated the defendant's lack of remorse and understanding of the seriousness of the offense. As a result, the trial court denied the defendant's request for community corrections and ordered him to serve the entirety of his sentence in confinement. This appeal followed.

*Analysis*

The defendant's sole issue on appeal is that the trial court erred by imposing confinement for the agreed upon six-year sentence. Specifically, the defendant argues the trial court made no consideration of the defendant's intellectual disability, a "prevailing mitigating factor." The State contends that the trial court acted within its discretion when it imposed the full sentence of confinement. We agree with the State.

In determining an appropriate sentence, a trial court must consider the following factors: (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on mitigating and enhancement factors; (6) any statistical information provided by the administrative office of the courts as to the sentencing practices for similar offenses in Tennessee; (7) any statement the defendant makes on his own behalf as to sentencing; and (8) the potential for rehabilitation. Tenn. Code Ann. §§ 40-35-103(5), -113, -114, -210(b). When an accused challenges the length and manner of service of a sentence, this Court reviews the trial court's determination under an abuse of discretion standard accompanied by a presumption of reasonableness. *State v. Bise*, 380 S.W.3d 682, 707 (Tenn. 2012). This Court will uphold the trial court's sentencing decision "so long as it is within the appropriate range and the record demonstrates that the sentence is otherwise in compliance with the purposes and principles listed by statute." *Id.* at 709-710.

Generally, alternative sentencing is available if the sentence actually imposed is ten years or less. Tenn. Code Ann. § 40-35-303(a). A defendant who is convicted as an especially mitigated or standard offender of a Class C, D, or E felony is considered a favorable candidate for alternative sentencing. Tenn. Code Ann. § 40-35-102(6)(A). In determining whether incarceration is appropriate, the trial court should consider whether:

(A)     Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;
(B)     Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or
(C)     Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant.

Tenn. Code Ann. § 40-35-103(1)(A)-(C). Additionally, "[t]he sentence imposed should be the least severe measure necessary to achieve the purposes for which the sentence is imposed," and "[t]he potential or lack of potential for the rehabilitation or treatment of the defendant should be considered in determining the sentence alternative or length of a term to be imposed." *Id.* § 40-35-103(4), (5).

Even if a defendant is deemed eligible for alternative sentencing, no criminal defendant is automatically entitled to it as a matter of law. *State v. Davis,* 940 S.W.2d 558, 559 (Tenn. 1997). Rather, the defendant bears the burden of proving his or her suitability for alternative sentencing options. *State v. Carter*, 254 S.W.3d 335, 347 (Tenn. 2008) (citing Tenn. Code Ann. § 40-35-303(b)). The defendant must show that the alternative sentencing option imposed "will subserve the ends of justice and the best interest of both the public and the defendant." *Hooper v. State*, 297 S.W.2d 78, 81 (Tenn. 1956), *overruled on other grounds*, *State v. Hooper*, 29 S.W.3d 11, 9-10 (Tenn. 2000).

In the case at bar, the record reflects that the trial court held a sentencing hearing prior to imposing a sentence of confinement and provided findings as to why it ordered the defendant to serve the entirety of his sentence incarcerated. The parties were afforded the opportunity to be heard, and the trial court considered both the sentencing statute and the facts of the case. Ultimately, the trial court found that confinement was necessary, not only to avoid depreciation of the seriousness of the offense, but also due to the defendant's lack of empathy for the victims and lack of remorse or understanding of the seriousness of the offense. The trial court made specific mention of the defendant's belief that some of the children in the images "enjoyed it" and Dr. Adler's warning of the defendant's potential to become predatory to satisfy his urges and sexual frustration. The trial court's ruling was consistent with the applicable statutes, reflected the purposes and principles of sentencing,

and was supported by the proof presented.  Accordingly, the trial court's sentence is presumed reasonable, and we conclude there was no abuse of discretion.

The defendant takes specific issue with the trial court's failure to apply the mitigating factor of the defendant's intellectual disability.  As the trial court noted in its ruling, while it recognized and considered the defendant's intellectual disability as a child, it found his disability was factored into the length of sentencing determination encapsulated within the plea agreement between the defendant and the State.  Despite the defendant's assertion that his disability "provides vital context and explanation for the offense," the defendant did not present evidence that his disability reduced his culpability.  *See* Tenn. Code Ann. § 40-35-113(8).  Instead, the record shows the defendant was able to graduate from high school, obtain steady employment, live independently, and, ultimately, search, find, and share over one hundred pornographic images and videos of children.  Further, there is no evidence to show that the defendant's disability hindered his ability to be remorseful or to understand the seriousness of his actions.  Therefore, the defendant is not entitled to relief.

### *Conclusion*

Based on the foregoing authorities and reasoning, we affirm judgment of the trial court.

_____
J. ROSS DYER, JUDGE